Clifford W. **SHEPARD, Appellant–Plaintiff,**

v.

**SCHURZ COMMUNICATIONS, INC., d/b/a Mooresville/Decatur Times, and Steven C. Litz, Appellees–Defendants.**

No. 55A04–0508–CV–479.

Court of Appeals of Indiana.

May 15, 2006.

---

Clifford W. Shepard, Indianapolis, for Appellant.

Gerald F. Lutkus, D. Michael Anderson, Barnes & Thornburg LLP, South Bend, for Appellee Schurz Communications, Inc.:

Steven C. Litz, Monrovia, for Appellee Steven C. Litz.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Clifford W. Shepard ("Shepard") appeals the grant of summary judgment and order for attorney fees in favor of Appellee–Defendant Schurz Communications, Inc. d/b/a Mooresville/Decatur Times ("the Times"). We affirm the grant of summary judgment and award of attorney fees, and remand for a hearing on appellate attorney fees.

### Issues

Shepard presents two issues for review:

I. Whether the Times was properly granted summary judgment pursuant to Indiana's strategic lawsuit against public participation statute ("anti-SLAPP statute"), Indiana Code Section 34–7–7–1 *et seq.;* and

II. Whether the award of $35,595.00 in attorney fees and $1,318.00 in costs is an abuse of discretion.

The Times raises an additional issue: whether it is entitled to appellate attorney fees.

### Facts and Procedural History

Shepard is an attorney who practices in Morgan County, Indiana. During 2002, he approached Monrovia town attorney Ste-

ven Litz ("Litz") on behalf of a client, requesting written verification of an allegedly delinquent sewer bill. In response, Litz provided Shepard with a document entitled "Delinquent List" containing the names, account numbers and addresses of Shepard's client and fifty-one additional Monrovia sewer customers. App. 21–22.

On February 8, 2002, Shepard issued a letter to each of the fifty-one additional sewer customers, stating in pertinent part:

Additionally, I thought it my civic duty to advise you that the Attorney Litz, as the attorney for the Town of Monrovia, has revealed to me and the Morgan Superior Court that you are on a "Delinquent List" of water and sewer customers. I advise you of this so that you may take such action as you deem appropriate to address this invasion of your privacy.

(App.30.) On February 13, 2002, the Times published an article authored by Michael Eads ("Eads"), with the headline "Monrovia town attorney steamed over letter." (App.28.) The article included the above-quoted language from Shepard's letter and summarized his allegation "that Litz gave him a list of 52 of the town's sewer customers who are purportedly delinquent on their bills." (App.28.) The article also quoted Litz's response to the letter, "Cliff Shepard is a liar. His statement is false." (App.28.)

On January 7, 2004, Shepard filed a "Complaint and Jury Demand" in the Morgan County Superior Court, naming as defendants the Times and Litz. Count I alleged that the Times defamed Shepard by publishing false statements of fact regarding him. Count II alleged that Litz likewise defamed Shepard. Shepard alleged that his professional reputation was damaged and sought compensation for defamation *per se*.[1]

On April 1, 2004, the Times filed its Answer, admitting that it published the article at issue. However, the Times asserted that it merely exercised its right to free speech related to a matter of public concern, made without actual malice, protected under the United States Constitution and the Indiana Constitution. The Times also asserted as an affirmative defense Shepard's failure to comply with the notice requirements of Indiana Code Section 34–15–4–2 and –3 (affording a newspaper the opportunity for retraction before the filing of a lawsuit).

On April 30, 2004, the Times filed its "Motion to Dismiss and for Order Staying Discovery," invoking the anti-SLAPP statute. (App.45.) Because the anti-SLAPP statute provides that the "motion to dismiss" is to be treated as a motion for summary judgment, the Times designated as supporting evidence: the complaint, affidavits of Eads and Editor James Kroemer ("Kroemer"), and three newspaper articles. On May 6, 2004, Litz filed a Motion to Dismiss. On October 21, 2004, the parties appeared for hearing on the motions to dismiss. On October 24, 2004, Shepard filed his response to the motions to dismiss, and moved for summary judgment.

On October 28, 2004, the trial court granted the Times' motion to dismiss, denied Litz's motion to dismiss, and denied Shepard's motion for summary judgment. The trial court also ordered "The Times and Mr. Shepard to resolved [sic] the issue of attorney fees, and to notify the Court if

---

1. To maintain an action for defamation, a plaintiff must show a communication with defamatory imputation, malice, publication, and damages. *Glasscock v. Corliss*, 823 N.E.2d 748, 753 (Ind.Ct.App.2005). However, defamation *per se*, for which one may recover nominal damages without proof of actual damages, includes communication of purported misconduct in one's trade or occupation. *Id.* at 754.

they are unable to do so." (App.11.) On December 28, 2004, the Times filed a Motion for Judgment on Costs and Attorney Fees. The trial court conducted a hearing on June 17, 2005. On July 15, 2005, the trial court entered an order awarding the Times $35,595.00 in attorney fees and $1,318.00 in costs. The trial court determined that there was no just cause for delay, and entered final judgment on behalf of the Times. Shepard now appeals.

## Discussion and Decision

### I. Summary Judgment on Defamation Claim

The trial court granted the Times summary judgment pursuant to the anti-SLAPP statute, Indiana Code Section 34–7–7–1 *et seq.* Section 1(a) provides in relevant part:

This chapter applies to an act in furtherance of a person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue or an issue of public interest that arises after June 30, 1998.

Section 2 specifies that an "act in furtherance of a person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue" includes free speech conduct "in connection with a public issue or an issue of public interest." A "person" is an individual or "any other legal entity." Ind. Code § 34–7–7–4.

Section 5 sets forth the "conditions under which rights of petition or free speech may be used as [a] defense," and provides:

It is a defense in a civil action against a person that the act or omission complained of is:

(1) an act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and

(2) an act or omission taken in good faith and with a reasonable basis in law and fact.

Indiana Code Section 34–7–7–9, entitled "Motion to dismiss; procedures and determination" sets forth procedures for a "Motion to Dismiss" filed by an anti-SLAPP statute defendant. Should the defendant prevail under the statute, the defendant is entitled to attorney fees. Ind.Code § 34–7–7–7; *Poulard v. Lauth,* 793 N.E.2d 1120 (Ind.Ct.App.2003).

Subsection (a) provides, notwithstanding the "motion to dismiss" caption, "If a person files a motion to dismiss under this chapter, the court in which the motion is filed shall do the following: (1) Treat the motion as a motion for summary judgment." [2] Subsections (b)-(d) provide:

(b) The person who files a motion to dismiss must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana.

(c) The court shall make its determination based on the facts contained in the pleadings and affidavits filed and discovered under the expedited proceeding.

---

**2.** *See also* Indiana Trial Rule 12(C) providing that, on a motion for judgment on the pleadings, when matters outside the pleadings are presented to and not excluded by the court,

the motion shall be treated as one for summary judgment and disposed of as provided in Indiana Trial Rule 56.

(d) The motion to dismiss shall be granted if the court finds that the person filing the motion has proven, by a preponderance of the evidence, that the act upon which the claim is based is a lawful act in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana.

The foregoing statute provides that summary judgment is appropriate only when the movant has "proven by a preponderance of the evidence" that the act underlying the claim is a lawful act, while under Trial Rule 56 the movant's burden is to make a "prima facie" showing of entitlement to judgment. *See Am. Mgmt., Inc. v. MIF Realty L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). The conflict is resolved in favor of the Trial Rule 56 standard, inasmuch as the Indiana Supreme Court has the inherent power to establish rules governing the course of litigation in our trial courts. *Jackson v. City of Jeffersonville*, 771 N.E.2d 703, 705–06 (Ind.Ct.App.2002), *trans. denied.* It is well-settled that, in the event of a conflict between a procedural statute and a procedural rule adopted by the Supreme Court, the latter shall take precedence. *Id.* Phrases in statutes that are contrary to the rules of procedure are considered a nullity. *Id.*

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Our standard of review is the same as the trial court's when reviewing a grant of summary judgment. *Kelley v. Tanoos*, 840 N.E.2d 342, 346–47 (Ind.Ct. App.2005). We consider only those facts that the parties designated to the trial

court. *Id.* The Court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind. 2002). We may affirm the grant of summary judgment upon any basis argued by the parties and supported by the record. *Kelley*, 840 N.E.2d at 347.

Accordingly, we examine whether the Times made a prima facie showing that it spoke lawfully and whether Shepard timely responded and identified a genuine issue of material fact precluding summary judgment upon his defamation claim. At the outset, we observe that it is uncontroverted that a matter of public interest is implicated here. Indeed, the Times article concerned Shepard's self-proclaimed "exercise of his civic duty" to inform citizens of an alleged invasion of their privacy. (App.30.)

Substantively, Indiana Code Section 34–7–7–9 does not supplant the Indiana common law of defamation, but provides that the movant must establish that his or her speech was "lawful." Ind. Code § 34–7–7–9(d).[3] To establish a claim of defamation, a plaintiff must prove the existence of " 'a communication with defamatory imputation, malice, publication, and damages.' " *Trail v. Boys and Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 135 (Ind., 2006) (quoting *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind.Ct.App.1999), *trans. denied* ). "[T]he actual malice standard of proof required in defamation cases involving matters of public or general concern applies not only to public figures, but to private individuals as well." *Journal–Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 449 (Ind.1999), *cert. denied*, 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385

3. *See also* Indiana Code Section 34–7–7–10, which provides: "The remedy provided by this chapter is in addition to other remedies provided by law."

(1999). This is so because, "in most instances, there is little disparity in the ability of private versus public individuals to obtain access 'to the channels of effective communication' in order to 'counteract false statements'" and because "'[a] citizen ... assume[s] the risk of media comment when he becomes involved ... in a matter of general or public interest.'" *Id.* at 452–53 (quoting *Aafco Heating & Air Conditioning Co. v. Northwest Publ'ns, Inc.,* 162 Ind.App. 671, 682, 321 N.E.2d 580, 588 (1974), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976)). Actual malice exists when the defendant publishes a defamatory statement "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* at 456 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

 Any statement actionable for defamation must not only be defamatory in nature, but false. *Trail,* at 136 (quoting Restatement (Second) of Torts § 558 (1977)). Initially, the determination of whether a communication is defamatory is a question of law for the courts, and "the allegedly defamatory words are to be construed in light of the circumstances of their utterance." *Rambo v. Cohen,* 587 N.E.2d 140, 145 (Ind.Ct.App.1992), *trans. denied.*[4] The alleged defamatory statement must be included in the complaint to aid the court in this task. *Trail,* at 136.

 In paragraph 19 of his complaint, Shepard quoted, with minor redactions, the entire Times article. The complaint did not identify a particular statement in the article as a false and defamatory statement. However, Shepard attached and incorporated by reference his Exhibit D, a copy of an e-mail he sent to Eads. Exhibit D reveals Shepard's insistence that his letter to Monrovia sewer customers was truthful, and his dissatisfaction with the article's "half-truth" and "speculation." (App.31–32.) However, the only communications that Shepard clearly treats as both false and defamatory were Litz's quoted statements relative to Shepard's credibility.[5] Thus, the case distills to whether the Times could lawfully publish Litz's statements: "Cliff Shepard is a liar. His statement is false." (App.81.)

The Times submitted affidavits from Eads and Kroemer indicating that they acted without malicious intent, but accurately reported a quotation upon a matter of public concern. The designated materials indicate that Litz's statements were quoted, but not adopted or endorsed by the Times. Moreover, Shepard was afforded a promptly published response. Kroemer averred:

Mr. Eads also authored another article reflecting Attorney Shepard's response to Attorney Litz and the Article, which was published in the very next edition of the Times on Saturday, February 16 at the top of the front page ("Second Story"). Because the Times was unable to include Attorney Shepard's perspective in the Article, the Times published the Second Story to provide its readers with Attorney Shepard's perspective, and to allow Attorney Shepard another oppor-

---

**4.** When a statement is capable of either a defamatory or non-defamatory interpretation, the determination is a question of fact for the jury. *Glasscock,* 823 N.E.2d at 753.

**5.** The trial court gleaned from Shepard's complaint and Exhibit D an additional chal-

lenged statement: "Shepard alleges, in letter dated Feb. 8, 2002, that Litz gave him a list of 52 of the town's sewer customers who are purportedly delinquent on their bills." (App.9.) However, this is not a statement that is defamatory to Shepard.

tunity to convey his perspective and respond to Attorney Litz.

(App.89.) The Times made a prima facie showing that it acted without malice and merely reported statements that were essentially rhetorical hyperbole by an opposing attorney, statements incapable of being proved true or false by the Times.

Shepard did not timely respond to the motion for summary judgment. He designated no evidence tending to show that the Times acted with malice. The Times was entitled to summary judgment in the absence of malice, as an element of Shepard's claim was negated. *Journal–Gazette Co.,* 712 N.E.2d at 449. Accordingly, because the speech was "lawful" and concerned an issue of public interest, the anti-SLAPP statute criteria were satisfied, providing for an award of attorney fees.

## II. Attorney Fees

▆ Next, Shepard challenges the award of $35,595.00 in attorney fees and $1,318.00 in costs incurred by the Times in obtaining the summary judgment in its favor. Shepard does not specifically challenge the hourly rate, but rather argues that the overall amount is unreasonably excessive, as the matter was not complex and could be easily disposed of on procedural grounds. Shepard claims that it would have been more cost effective had the Times pursued a motion to dismiss (based upon Shepard's failure to comply

with the Indiana Retraction Statute, Indiana Code 34–15–4–1, *et seq.*),[6] rather than a summary judgment motion. The Times responds that Shepard failed to present any evidence that the fees were unreasonable and, moreover, its Answer included an affirmative defense that Shepard did not comply with the Retraction Statute, yet Shepard failed to voluntarily dismiss the complaint before the summary judgment hearing.

▆ Indiana adheres to the "American Rule" with respect to the payment of attorney fees and requires that parties pay their own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary. *Courter v. Fugitt,* 714 N.E.2d 1129, 1132 (Ind.Ct.App. 1999). Here, as previously observed, the anti-SLAPP statute provides for the payment of attorney fees to the prevailing defendant. When attorney fees are recoverable, the amount of an award is left to the sound discretion of the trial court. *Burk v. Heritage Food Serv. Equip., Inc.,* 737 N.E.2d 803, 819 (Ind.Ct.App.2000). An award of attorney's fees will be reversed on appeal as excessive only where an abuse of the trial court's discretion is apparent on the face of the record. *Daimler Chrysler Corp. v. Franklin,* 814 N.E.2d 281, 287 (Ind.Ct.App.2004), *trans. denied.*

▆ The criteria listed in Professional Conduct Rule 1.5(a) are to be considered in determining reasonable attorney fees.[7]

---

**6.** Indiana Code Section 34–15–4–3 provides that a litigant who does not comply with the Retraction Statute can recover only "actual damages."

**7.** Rule 1.5(a) provides as follows: "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and

the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;

*In re Estate of Inlow,* 735 N.E.2d 240, 257 (Ind.Ct.App.2000). Here, the trial court's order referenced two criteria, the novelty of the anti-SLAPP issues and the experience, reputation and ability of the attorneys involved. Moreover, the reasonableness of attorney's fees is a matter regarding which the judge, being a lawyer, may take judicial notice. *Daimler Chrysler,* 814 N.E.2d at 288. Under the circumstances, we cannot say that the trial court abused its discretion in the award of attorneys fees.

### III. Appellate Attorney Fees

■ Finally, the Times requests appellate attorney fees. The anti-SLAPP statute does not expressly provide for appellate attorney fees. Nevertheless, the language of the statute is sufficiently broad to encompass appellate attorneys fees. In general, the purpose of allowing an award of attorney's fees in a civil action is to "make whole" and fully compensate a party who has successfully enforced his legal rights in court. *Parrish v. Terre Haute Sav. Bank,* 438 N.E.2d 1, 3 (Ind.Ct.App.1982). With reference to the anti-SLAPP statute in particular, the primary import appears to be that it "place[s] the financial burden of defending against so-called SLAPP actions on the party abusing the judicial system by bringing a SLAPP lawsuit." *Poulard,* 793 N.E.2d at 1124. As *Poulard* observes, the fee shifting provision has a chilling effect upon abusive lawsuits. A party who has lawfully exercised his or her First Amendment rights cannot be fully compensated if appellate attorney fees are ignored. Accordingly, we remand to the trial court for a hearing on appellate attorney fees.

Summary judgment is affirmed; we remand for an appellate attorney fees hearing.

KIRSCH, C.J., and CRONE, J., concur.

(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."