NEXUS GROUP, INC., Appellant–
Plaintiff,

v.

HERITAGE APPRAISAL SERVICE
and Alan Landing, Appellees–
Defendants.

No. 46A03–1007–PL–418.

Court of Appeals of Indiana.

Feb. 10, 2011.

**120**

Alan A. Bouwkamp, Carl J. Becker, Newton Becker Bouwkamp Pendoski, PC, Indianapolis, IN, Attorneys for Appellant.

John F. Lake, Lake & Lake, Michigan City, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Nexus Group, Inc. (Nexus), appeals the trial court's order granting summary judgment in favor of appellees-defendants Heritage Appraisal Service and Alan Landing (collectively, Heritage). Nexus argues that the trial court erroneously concluded that Nexus's defamation action against Heritage is barred by the anti-SLAPP statute [1] and that there are genuine issues of material fact precluding summary judgment. Finding that summary judgment was properly entered and that appellate attorney fees are warranted pursuant to the purpose of the anti-SLAPP statute, we affirm and remand for a hearing on appellate attorney fees.

### FACTS

Nexus assists and consults county and township officials in assigning assessed values to properties located in the townships and counties. Among other places, Nexus has a business relationship with LaPorte County that dates back to 2004. Nexus also provides services to the LaPorte County Property Tax Assessments Board of Appeals (the Board). Heritage, which is owned by Landing, is engaged in the business of appraising real property. Heritage had a previous business relationship with LaPorte County and the Board, and is a business competitor of Nexus.

On July 29, 2007, Heritage wrote a letter to Laurie Wink, who is a reporter for The News–Dispatch, about Nexus.

1. Ind.Code § 34–7–7–1 et seq.

Among other things, the letter contained the following statements:

- I have seen massive over assessments especially in the industrial sector in Michigan City and even Nexus, the out of town firm hired without a bid contract says they have no support for the number they chose to value this acreage.
- ... I can only say [Nexus] know[s] nothing about this community or appraising property. I have seen land go up 1000% without any support for the increase.
- [LaPorte County] hired a firm that has no knowledge of our community and turned them loose. They hired no local appraisers to assist them and personally attack anyone who tries to question them.

Appellant's App. p. 16–17. On August 3, 2007, the News–Dispatch published an article that included the following statements attributed to Landing:

- "[Nexus's efforts are] some of the worst work I've seen. They don't have any knowledge of what they're doing at all."
- "Nexus consultants are unfamiliar with the county's property and do not have a local appraiser on their staff."

Appellant's App. p. 63–64. Landing denies making those statements.

On September 26, 2007, Nexus filed a complaint against Heritage for defamation per se, defamation per quod, and punitive damages. On April 30, 2010, Heritage filed a motion to dismiss the complaint, arguing that Nexus's claims are barred by the anti-SLAPP statute and seeking attorney fees. On July 1, 2010, the trial court granted the motion, finding, in pertinent part, as follows:

6. The Court finds that the issues addressed in Landing's letter concerning tax assessments in LaPorte County are issues of public interest and, therefore, the Court finds that Landing's exercise of speech in writing the July 29, 2007 letter was in properly [sic] connection with a legitimate public interest.

7. Based on the evidence that has been designated by [Heritage], Landing had extensive personal knowledge of the tax appeals involving Nexus and regular personal contact with Nexus employees and city officials concerning the tax assessment issues, the Court finds that Landing wrote the letter in good faith and with a reasonable basis in law and fact.

8. Accordingly, the Court finds that [Heritage], by a preponderance of the evidence, [has] fulfilled the requirements of the Indiana anti-SLAPP Statute.

\* \* \*

13. In light of Landing's affidavit and communication records concerning his experience with Nexus and personal knowledge of the assessments conducted in LaPorte County, the Court finds that [Nexus] did not designate sufficient evidence to permit the conclusion that Landing entertained serious doubts as to the truth of his letter.

14. Further, the Court finds that [Nexus] failed to allege facts tending to show that Landing knowingly made false statements in his July 29th letter concerning Nexus.

15. Accordingly, the Court finds [Nexus] failed to prove that Landing acted with actual malice in writing the July 29th letter. In the absence of actual malice, the Court finds [Heritage is] entitled to Summary Judgment on the defamation claim brought against them.

*Id.* at 6–7. The trial court, pursuant to the anti-SLAPP Statute, awarded reasonable attorney fees to Heritage. Nexus now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The trial court found that Heritage's motion to dismiss was converted to a motion for summary judgment pursuant to Indiana Code section 34–7–7–9.[2] It is well established that to the extent that Trial Rule 56, which governs summary judgment motions, conflicts with the anti-SLAPP Statute, Trial Rule 56 controls. *Hamilton v. Prewett,* 860 N.E.2d 1234, 1240 (Ind.Ct.App.2007).

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

### II. The Anti–SLAPP Statute

■ Strategic lawsuits against public participation (SLAPPs) are "meritless suits aimed at silencing a plaintiff's opponents, or at least diverting their resources." John C. Barker, Common–Law and Statutory Solutions to the Problem of

SLAPPS, 26 Loy. L.A. L.Rev. 395, 403 (1993). To discourage such lawsuits, Indiana adopted the anti-SLAPP statute in 1998, and in pertinent part, the statute provides as follows:

> It is a defense in a civil action against a person that the act or commission complained of is:
>
> (1) an act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and
>
> (2) an act or omission taken in good faith and with a reasonable basis in law and fact.

I.C. § 34–7–7–5. "Good faith," in the context of defamation law, is defined as "a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable." *Owens v. Schoenberger,* 681 N.E.2d 760, 764 (Ind.Ct.App.1997).

Nexus does not dispute that Heritage's statements were made in connection with a public issue—specifically, property tax assessments, the property tax system, and the way in which the county spends its funds. Consequently, the only thing we must determine is whether the trial court properly found that Heritage made the statements in good faith and with a reasonable basis in law and fact. We will consider each of the statements highlighted by Nexus in its complaint.

> *"I have seen massive over assessments especially in the industrial sector in Michigan City and even Nexus, the out of town firm hired without a bid contract says they have no support for the*

---

2. This statute provides that if a person files a motion to dismiss under the anti-SLAPP Statute, the trial court shall treat the motion as a motion for summary judgment. I.C. § 34–7–7–9(a)(1).

*number they chose to value this acreage."*

■ As support for its belief that this statement is accurate, Heritage directs us to evidence that Landing personally researched the assessments of industrial parcels in Michigan City and contacted Nexus about the results of his research. A Nexus employee told Landing that there were "no vacant land sales that were used to establish the land base rate" and that "all the commercial/industrial parcels in that neighborhood are being assessed at a rate of $30,000.00 per acre for usable land." Appellant's App. p. 151–52. The sales used by Nexus at tax appeal hearings to justify the $30,000 per acre assessments were shown to be invalid industrial sales. As a result of Landing's research and data, the Board determined that a mass reduction was warranted and planned to lower all similar land parcels in the township to $10,000 per acre or less.

Putting aside whether this statement was actually true or false, we note that Nexus has offered no evidence establishing that Heritage knew it was false or entertained serious doubts as to its truth. As a general matter, Nexus directs our attention to evidence that Heritage is a business competitor of Nexus, that Landing considered himself to be an "adversary" of Nexus, appellant's app. p. 175, and that Landing allegedly harbored resentments stemming from Nexus's failure to retain his services in the past. Nexus argues that this evidence establishes Heritage's bad faith.

While this evidence, if true, tends to show that Heritage may not have been acting solely out of concern for the well-being of the community by sending the letter to the newspaper, we cannot conclude that it establishes that Heritage was not acting in good faith. To the contrary, the record reveals that Landing was genuinely concerned about the quality of the work being performed by Nexus and the fact that the county was footing the bill. That he also may have been motivated by self-interest makes him human, but does not necessarily mean that he acted in bad faith. With respect to each of these statements, the record shows that Landing genuinely believed that he was being factual and also believed that it would be best for his community to sever ties with Nexus. Consequently, we do not find that this evidence establishes that Landing acted in bad faith or without a reasonable basis in law and fact.

*"I have been in a tax hearing with Nexus and I can only say they know nothing about this community or appraising property. I have seen land go up 1000% without any support for the increase,"* and *"[LaPorte County] hired a firm that has no knowledge of our community and turned them loose. They hired no local appraisers to assist them and personally attack anyone who tries to question them."*

■ The record reveals that Landing attended tax appeal hearings at which Nexus participated and at which Nexus's property assessments were reduced, sometimes significantly. As noted above, Landing believed that Nexus had assigned industrial property values with no supporting industrial land sale data underlying the assigned values. Additionally, Landing discovered other errors in the data used by Nexus, such as improper sales being applied to incorrect properties, incorrect zoning assignments, and a general lack of familiarity with the local area. Nexus has offered no evidence establishing that Landing knew this statement to be false or that he harbored serious doubts about its veracity. Consequently, the trial court properly concluded that Heritage acted in good faith and with a

reasonable basis in law and fact when making this statement.

"[Nexus's efforts are] some of the worst work I've seen. They don't have any knowledge of what they're doing at all," and "Nexus consultants are unfamiliar with the county's property and do not have a local appraiser on their staff."

These statements were included in a newspaper article and attributed to Landing. Heritage designated evidence establishing that Landing denied making these statements as quoted. Nexus has offered no evidence, apart from the article itself, contradicting Landing's denial. Consequently, the record establishes that, in fact, Landing did not make these statements at all.

Even when considering the record in Nexus's favor, as we must when ruling on a summary judgment order, we agree with the trial court that there is no genuine issue as to any material fact and that Heritage is entitled to judgment as a matter of law. Specifically, it is undisputed that Heritage's statements related to a matter of public interest. And Nexus has failed to designate any evidence tending to establish that Heritage acted in bad faith or without a reasonable basis in law and fact when it made its statements in the letter. Consequently, Heritage is entitled to judgment as a matter of law. I.C. § 34–7–7–9(d).

■ Finally, we note that the anti-SLAPP statute "is intended to reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Hamilton*, 860 N.E.2d at 1242. Therefore, to reduce the number of lawsuits brought to chill speech, a movant who prevails on a motion to dismiss filed pursuant to the anti-SLAPP statute is entitled to reasonable attorney fees and costs. I.C. § 34–7–7–7.

■ Here, as a prevailing defendant, the trial court awarded attorney fees and costs to Heritage. On appeal, Heritage requests appellate attorney fees as well. In *Shepard v. Schurz Communications, Inc.*, 847 N.E.2d 219 (Ind.Ct.App.2006), this court considered a request for appellate attorney fees from a prevailing anti-SLAPP defendant:

With reference to the anti-SLAPP statute in particular, the primary import appears to be that it "place[s] the financial burden of defending against so-called SLAPP actions on the party abusing the judicial system by bringing a SLAPP lawsuit." *Poulard [v. Lauth*, 793 N.E.2d 1120, 1124 (Ind.Ct.App. 2003)]. As *Poulard* observes, the fee shifting provision has a chilling effect upon abusive lawsuits. A party who has lawfully exercised his or her First Amendment rights cannot be fully compensated if appellate attorney fees are ignored. Accordingly, we remand to the trial court for a hearing on appellate attorney fees.

*Id.* at 227. Based on the same reasoning as that employed by the *Shepard* court, we likewise remand to the trial court for a hearing on appellate attorney fees.

The judgment of the trial court is affirmed and remanded for an appellate attorney fees hearing.

VAIDIK, J., and BARNES, J., concur.