# FOR PUBLICATION



FILED
Sep 21 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY A. MACEY**
Macey Swanson and Allman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**LINDSEY A. GROSSNICKLE**
**MATTHEW R. SHIPMAN**
Bloom Gates & Whiteleather, LLP
Columbia City, Indiana

**MICHAEL A. WILKINS**
Broyles Kight & Ricafort, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JANICE BRANDOM, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 92A03-1112-PL-542 |
| | ) | |
| COUPLED PRODUCTS, LLC, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WHITLEY CIRCUIT COURT
The Honorable James R. Heuer, Judge
Cause No. 92C01-1010-PL-690

**September 21, 2012**

**OPINION – FOR PUBLICATION**

**MAY, JUDGE**

Janice Brandom's employer, Coupled Products, LLC, sued her for defamation after she made comments to a local newspaper about Coupled. Brandom moved to dismiss pursuant to the "anti-SLAPP" statute, Ind. Code § 34-7-7-5, which is intended to discourage lawsuits brought primarily to chill free speech about issues of public concern. Her motion was denied, and we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Brandom was an employee of Coupled Products. Coupled's hourly employees are represented by UAW Local 2049 ("the Local"), and Brandom was chair of the Local's bargaining committee. Between August of 2009 and July of 2010, articles appeared in a Whitley County newspaper about Coupled's proposed move of equipment from an Ohio facility to Columbia City, Indiana; a tax abatement Whitley County had promised in exchange for the move; and jobs the move would bring.

On September 16, 2009, the newspaper published an article with a number of statements Coupled contends are false: 1) that Coupled received a tax abatement from Whitley County after it announced plans to move some of its operations to Columbia City from Ohio; 2) that Coupled was making automotive components for Ford, General Motors, and Chrysler; 3) that seven truckloads of equipment were delivered to Coupled but were removed after the Local voted down certain concessions; 4) that Coupled asked members of the Local to surrender sickness and accident pay, bereavement pay, dental and life insurance,

---

[1] We heard oral argument August 6, 2012. We commend counsel on the quality of their advocacy.

and a one dollar per hour raise; and 5) that Coupled raised the deductible on the employees' health insurance plan without the knowledge or consent of the Local. Coupled believed Brandom was the source of those statements.

Coupled sued Brandom for defamation, submitted evidence to contradict the statements Brandom allegedly gave the newspaper, and submitted evidence there had been a "noticeable decrease in employee morale and productivity" and "a noticeable increase in hostility" toward management. (Appellee's App. at 78.) Brandom moved to dismiss pursuant to the "Anti-SLAPP" statute on the ground the statements were made in furtherance of her right to free speech in connection with an issue of public interest. Both parties designated evidence, and the trial court denied Brandom's motion to dismiss. It then certified its order for interlocutory appeal, and we accepted jurisdiction.

## DISCUSSION AND DECISION

"SLAPPs," or Strategic Lawsuits Against Public Participation, are "meritless suits aimed at silencing a plaintiff's opponents, or at least at diverting their resources." *Hamilton v. Prewett*, 860 N.E.2d 1234, 1241-42 (Ind. Ct. App. 2007) (quoting John C. Barker, *Common–Law and Statutory Solutions to the Problem of SLAPPS,* 26 Loy. L.A. L. Rev. 395, 403 (1993)), *trans. denied*. The anti-SLAPP statute is intended to reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. *Id.* To reduce the number of lawsuits brought to chill speech, a defendant who prevails on a motion to dismiss under the anti-

SLAPP statute is entitled to recover reasonable attorney's fees and costs. Ind. Code § 34-7-7-7.

The "anti-SLAPP" statute provides:

> It is a defense in a civil action against a person that the act or omission complained of is:
> (1) an act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and
> (2) an act or omission taken in good faith and with a reasonable basis in law and fact.

Ind. Code § 34-7-7-5. The person who files a motion to dismiss must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person's constitutional right of petition or free speech. Ind. Code § 34-7-7-9.

A motion to dismiss brought under this chapter is treated as a motion for summary judgment. Ind. Code § 34-7-7-9. The motion is to be granted if the court finds the person filing the motion has proven, by a preponderance of the evidence, that the act on which the claim is based is a lawful act in furtherance of the person's constitutional right of petition or free speech. *Id.*

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hamilton,* 860 N.E.2d at 1240. On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against Brandom, the moving party. *See id.* All facts and reasonable inferences

4

from those facts are construed in favor of Coupled, the nonmoving party. *See id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.* The party appealing a summary judgment has the burden of persuading us the grant or denial of summary judgment was erroneous. *Id.*

Brandom spoke on a matter of public interest but there is a genuine issue as to whether she spoke in good faith and without malice. Her motion to dismiss was therefore properly denied.

### 1. Issue of Public Interest

Brandom demonstrated her speech was related to an issue of public interest. The person who files a motion to dismiss must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person's constitutional right of petition or free speech. Ind. Code § 34-7-7-9.[2]

Coupled alleged Brandom's defamatory statements were her statements to the newspaper that: (1) Coupled had received a tax abatement from Whitley County after it

---

[2] Coupled first asserts Brandom's statement of the issue of public interest related to her speech was not sufficiently specific. Coupled offers no authority to explain what level of specificity the statute requires, nor does it explain why Brandom's statement was inadequate. Rather, it simply concludes her motion does not "state with any specificity the public issue or issue of public interest that prompted the act." (Br. of Appellee at 13.)

Brandom responds by pointing to language she included in the motion to dismiss, then concludes, also without citation to authority, she "clearly complied with her obligations under the anti-SLAPP statute." (Appellant's Reply Br. at 3.) In her motion, she did not quote or paraphrase specific statements she made, but she accurately characterized the statements as made in the context of negotiations between the Local and Coupled, which negotiations "concerned the move of a significant portion of [Coupled's] business to the Columbia City facility whose employees are represented by" the Local. (Appellee's App. at 93.) The statements "all concerned either the details of the move or concessions that [Coupled] had asked its employees to make in anticipation of the move." (*Id.*) Brandom's statement was specific enough.

5

announced plans to move some operations from Ohio to Columbia City; (2) Coupled was manufacturing automobile components for General Motors, Ford and Chrysler; (3) seven truckloads of equipment were delivered to Coupled but were removed after the Local voted down certain concessions; (4) Coupled asked the union members to surrender their sickness and accident pay, bereavement pay, their dental and life insurance, and a one dollar per hour raise; and (5) Coupled raised the health insurance deductible without the knowledge or consent of the Local.

Speech is on a matter of public concern if it is addressed to "any matter of political, social, or other concern to the community," as determined by its content, form, and context. *Love v. Rehfus*, 946 N.E.2d 1, 10 (Ind. 2011) (quoting *Connick v. Myers,* 461 U.S. 138, 146 - 48 (1983)), *reh'g denied*. Our courts have not addressed at length when speech is or is not about a matter of public concern in the anti-SLAPP context, but we find instructive the analysis in *Cross v. Cooper*, 127 Cal. Rptr. 3d 903, 912-14 (Cal. Ct. App. 2011), *as modified on denial of reh'g*, *review denied*:

> [The terms "public interest" and "public issue"] are inherently amorphous and thus do not lend themselves to a precise, all-encompassing definition. Some courts have noted commentary that no standards are necessary because courts and attorneys will, or should, know a public concern when they see it.
> Nevertheless, courts have discussed how to decide whether a statement concerns a matter of public interest. In *Nygard, Inc. v. Uusi–Kerttula* (2008) 159 Cal.App.4th 1027, 72 Cal.Rptr.3d 210 (*Nygard*), the court pointed out that although [the California anti-SLAPP statute] does not define "public interest," it does mandate that its provisions "'be construed broadly' to safeguard 'the valid exercise of the constitutional rights of freedom of speech and petition for

6

the redress of grievances." (*Id.* at p. 1039, 72 Cal.Rptr.3d 210, quoting §
425.16, subd. (a).)

* * * * *

Accordingly, courts have broadly construed "public interest" to include
not only governmental matters, but also private conduct that impacts a broad
segment of society and/or that affects a community in a manner similar to that
of a governmental entity. Indeed, even before the Legislature mandated broad
construction, the court in [*Church of Scientology v. Wollersheim*, 42 Cal. App.
4th 628, 49 Cal. Rptr. 2d 620 (1996), *review denied*] opined that "[a]lthough
matters of public interest include legislative and governmental activities, they
may also include activities that involve private persons and entities, especially
when a large, powerful organization may impact the lives of many
individuals." (*Id.* at p. 650, 49 Cal.Rptr.2d 620). And in *Nygard, supra,* 159
Cal.App.4th at page 1042, 72 Cal.Rptr.3d 210, the court opined that taken
together, the legislative history of the amendment and the cases that
precipitated it "suggest that 'an issue of public interest' . . . is *any issue in
which the public is interested.* In other words, the issue need not be
'significant' to be protected by the anti-SLAPP statute -- it is enough that it is
one in which the public takes an interest."

In [*Rivero v. Am. Fed'n of State, County, & Mun. Employees, AFL-CIO*,
105 Cal. App. 4th 913, 130 Cal. Rptr. 2d 81 (2003), *review denied*], the court
reviewed several cases and described three non-exclusive and sometimes
overlapping categories of statements that have been given anti-SLAPP
protection. (*Id.* at pp. 919–924, 130 Cal.Rptr.2d 81.) The first category
comprises cases where the statement or activity precipitating the underlying
cause of action was "a person or entity in the public eye." (*Id.* at p. 924, 130
Cal.Rptr.2d 81.) The second category comprises cases where the statement or
activity precipitating the underlying cause of action "involved conduct that
could affect large numbers of people beyond the direct participants." (*Ibid.*)
And the third category comprises cases where the statement or activity
precipitating the claim involved "a topic of widespread, public interest."
(*Ibid.*) Courts have adopted these categories as a useful framework for
analyzing whether a statement implicates an issue of public interest and thus
qualifies for anti-SLAPP protection.

We agree with Brandom that her statements were "undertaken in connection with a

public issue in furtherance of [Brandom's] right to free speech." (Appellee's App. at 91.)

Her statements were made in the context of negotiations between Coupled and the union

7

concerning a move of some of Coupled's business to Columbia City, and all the statements "concerned either the details of the move or concessions [Coupled] had asked its employees to make in anticipation of the move." (*Id.* at 93.) The economic impact of the move made the issue one of public interest and the matter was significant enough to the community that the local newspaper devoted several articles to it.

Brandom's statements fit within the second and third *Cross* categories, *i.e.*, statements involving conduct that could affect large numbers of people beyond the direct participants and statements involving a topic of widespread, public interest.

In *Love*, a firefighter sent a private e-mail supporting a candidate for trustee and criticizing the efficiency and financial stability of the township's fire department. Our Indiana Supreme Court found the government's allocation of funds and resources within a fire department was a matter of public concern, and Love's email was not "an extension of any dispute with his superiors. . . . [T]his was a general grievance as to the operation of government like the letter in *Pickering*;[3] it was not an employment-related grievance." *Id.* at 10 (footnote added).

---

[3] In *Pickering v. Board of Education,* 391 U.S. 563, 566 (1968), the United States Supreme Court held the First Amendment protected a public school teacher who wrote a letter to a newspaper in which he criticized the allocation of school funds and the manner by which the school board raised such funds:

> *Pickering* and its progeny provide a two-step analysis for determining whether the First Amendment protects an employee's speech. First, the employee must have been speaking as a citizen on a matter of public concern. *Garcetti* [*v. Ceballos,* 547 U.S. 410, 418 (2006)]. If this threshold requirement is not met, then there is no First Amendment retaliation claim. *Id.* If the employee satisfies this threshold, then the *Pickering* balancing test must be applied to determine if the government was justified in "treating the employee differently from any other member of the general public."

8

Nor did Brandom's statements in the case before us reflect a mere "employment-related grievance." *See id.* To the extent the Local's willingness to accept pay and benefit concessions might have affected Coupled's decision whether to move some of its operations to Columbia City, the outcome of such employment-related grievances had broader implications that would affect large numbers of people beyond the direct participants. As her statements dealt with "the role of [Coupled] in the economic development of Columbia City," (Appellant's Br. at 13), and the effect on the community of the tax abatement and the expansion of jobs and economic activity there, they addressed matters of public interest.

### 2.     Good Faith / Malice

While Brandom's statements were made "in connection with a public issue," Ind. Code § 34-7-7-5, there is a genuine issue of material fact as to whether she made the statements without malice or "in good faith and with a reasonable basis in law and fact."[4] *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Hamilton,* 860 N.E.2d at 1240. Resolving, as we must, all doubts as to the

---

*Love*, 946 N.E.2d at 9 (quoting *Garcetti*, 547 U.S. at 418). Neither *Love* nor *Pickering* addressed an anti-SLAPP statute. Rather, both involved claims by public employees that they had been fired, not sued, for statements they made.

[4] Coupled argues, pursuant to that section of the anti-SLAPP statute, Brandom's statements were not made in good faith. In her brief, Brandom argues her statements were not made with actual malice. (Appellant's Br. at 14) (citing *Shepard v. Schurz Communications, Inc.,* 847 N.E.2d 219, 224 (Ind. Ct. App. 2006), which applied an actual malice standard in an anti-SLAPP case). Brandom does not offer argument about good faith, and Coupled does not offer argument about malice in its argument the anti-SLAPP statute does not apply. It does argue, in the alternative, that if this court should "consider matters outside the scope of the Anti-SLAPP statute," Brandom's statements were defamatory because they were made with actual malice. (Br. of Appellee at 16.) We find there is a genuine issue of fact under either standard.

9

existence of material issues of fact against Brandom, the moving party, *id*., and construing all facts and reasonable inferences from those facts in favor of the nonmoving party, Coupled, *id*., we hold the trial court could properly deny Brandom's motion to dismiss on the ground there is an issue[5] whether her statements were made in good faith or were made with malice. *Id.*

In *Nexus Group, Inc. v. Heritage Appraisal Serv.*, 942 N.E.2d 119, 122 (Ind. Ct. App. 2011), we stated the definition of "good faith" in the context of defamation law: "a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable." *Id*. (quoting *Owens v. Schoenberger,* 681 N.E.2d 760, 764 (Ind. Ct. App. 1997), *reh'g denied*). We addressed whether the various statements Heritage made were in good faith. The first was: "I have seen massive over assessments especially in the industrial sector in Michigan City and even Nexus, the out of town firm hired without a bid contract says they have no support for the number they chose to value this acreage." *Id*. at 122-23. We noted the research Heritage did and the data it collected to support that statement, then said:

> Putting aside whether this statement was actually true or false, we note that Nexus has offered no evidence establishing that Heritage knew it was false or entertained serious doubts as to its truth. As a general matter, Nexus directs our attention to evidence that Heritage is a business competitor of Nexus, that

---

[5] Judge Barnes's well-supported dissent appears to be based on the premise he "cannot conclude that this evidence establishes that Brandom acted in bad faith or without a reasonable basis in law or fact." *Brandom v. Coupled Products, LLC*, No. 92A03-1112-PL-542, slip op. at 17 (Ind. Ct. App. 2012). Nor can we, and we do not reach any such conclusion. Rather, we hold only that the designated evidence gives rise to a genuine issue of fact as to whether Brandom's statements were in good faith.

Landing considered himself to be an "adversary" of Nexus, appellant's app. p. 175, and that Landing allegedly harbored resentments stemming from Nexus's failure to retain his services in the past. Nexus argues that this evidence establishes Heritage's bad faith.

While this evidence, if true, tends to show that Heritage may not have been acting solely out of concern for the well-being of the community by sending the letter to the newspaper, we cannot conclude that it establishes that Heritage was not acting in good faith. To the contrary, the record reveals that [Heritage's owner] was genuinely concerned about the quality of the work being performed by Nexus and the fact that the county was footing the bill. That he also may have been motivated by self-interest makes him human, but does not necessarily mean that he acted in bad faith. With respect to each of these statements, the record shows that Landing genuinely believed that he was being factual and also believed that it would be best for his community to sever ties with Nexus. Consequently, we do not find that this evidence establishes that Landing acted in bad faith or without a reasonable basis in law and fact.

*Id*. at 123.

Bad faith, then, appears to require, regardless of truth or falsity, a statement the speaker "knew . . . was false or entertained serious doubts as to its truth"; even if the speaker is "motivated by self-interest," a statement might not be in bad faith if the speaker "genuinely believed that he was being factual and also believed that it would be best for his community" to pursue the subject matter of the statement. *Id*. at 123.

As for malice, we said in *Shepard* that

[s]ubstantively, [the anti-SLAPP statute] does not supplant the Indiana common law of defamation, but provides that the movant must establish that his or her speech was "lawful." Ind. Code § 34-7-7-9(d). To establish a claim of defamation, a plaintiff must prove the existence of "'a communication with defamatory imputation, malice, publication, and damages.'"

\* \* \* \* \*

Actual malice exists when the defendant publishes a defamatory statement "'with knowledge that it was false or with reckless disregard of whether it was false or not.'"

11

847 N.E.2d at 224-25 (footnote and internal citations omitted).

Brandom relies on *Shepard* as the basis for her argument Coupled was obliged to prove she acted with actual malice, and not just that her speech was not in good faith. There is malice when a defendant publishes a defamatory statement with knowledge it is false or with reckless disregard of whether it was false. *Id.* at 225.

Actual malice is not an objective standard of reasonableness; rather, it is a subjective standard that requires one challenging the speech, here Coupled, to prove by clear and convincing evidence that the speaker "'in fact entertained serious doubts as to the truth of his publication,' or acted with a 'high degree of awareness of . . . probable falsity.'" *Love*, 946 N.E.2d at 14-15 (quoting *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510 (1991)). A speaker is not required to verify facts before speaking unless she has some reason to doubt the veracity of those facts. *Id*. at 15. The actual malice standard protects those negligent or careless false statements of fact that are inevitable in free debate. *Id.*

There is a genuine issue of fact as to whether Brandom knew her statements were false, entertained serious doubts as to their truth, or made the statements with reckless disregard of whether they were false. Coupled addresses only one of Brandom's statements in support of its argument she did not act in good faith: "[at] the very least, Brandom cannot show good faith on the issue of whether Coupled sought additional concessions from UAW Local 2049 including company provided bereavement pay, sickness and accident pay, dental insurance, life insurance, and a One Dollar ($1) an hour raise." (Br. of Appellee at 14.)

12

There was evidence before the trial court that could permit a jury to infer Brandom might not have "genuinely believed [she] was being factual" in her statements that Coupled demanded additional concessions or that she entertained serious doubts," *id*., as to the truth of the statements.

Coupled points to evidence Brandom "clearly knew," (Br. of Appellee at 5), that the only concessions Coupled had asked for were the surrender of the employer portion of the dental and life insurance premiums, but despite that knowledge, Brandom told the newspaper Coupled sought additional concessions -- specifically bereavement pay, sickness and accident pay, dental insurance, life insurance, and a one dollar per hour raise.

Brandom admitted she told the newspaper that Coupled raised the deductible on the company's health insurance plan without the knowledge or consent of the Local officials, which statement was inconsistent with statements made during negotiations between Coupled and the Local. Coupled then asserts "Brandom admitted she conveyed to [the newspaper] that Coupled sought additional concessions from UAW Local 2049 including company provided bereavement pay, sickness and accident pay, dental; insurance, life insurance, and a One Dollar ($1) an hour raise." (*Id*.) In the interrogatory response to which Coupled directs us, Brandom said "[t]he fact *that these possible concessions were discussed* is true." (*Id*. at 32) (emphasis added). Coupled directs us to evidence Coupled "never formally asked the Local 2049 to surrender anything but the employer portion of the life and dental insurance," (Br. of Appellee at 5), and never "asked the bargaining committee for a concession that

13

involved forfeiting union employees' sickness, accident, or bereavement pay." (*Id*.)

We acknowledge Brandom's argument she did not speak with malice because her statements had "a substantial basis in the truth" which is enough to defeat defamation. *See Love*, 946 N.E.2d at 15 n.13 ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'") (quoting *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510 (1991)). Brandom notes evidence a union representative who met with Coupled testified that, while Coupled did not "formally propose" the union members give up the additional concessions, they were all "on the table." (Appellant's App. at 124.)

As there was a genuine issue of fact as to whether Brandom genuinely believed she was being factual in her statements that Coupled demanded additional concessions or that she entertained serious doubts as to the truth of the statements, her motion to dismiss was properly denied. We accordingly affirm.

Affirmed.

FRIEDLANDER, J., concurs.

BARNES, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JANICE BRANDOM, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 92A03-1112-PL-542 |
| | ) | |
| COUPLED PRODUCTS, LLC, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BARNES, Judge, dissenting with opinion**

I agree that Brandom's statements related to an issue of public interest. I dissent, however, from the majority's holding that genuine issues of material fact exist regarding Brandom's good faith. As a result, I conclude that the trial court's denial of Brandom's motion to dismiss should be reversed.

A defendant is entitled to dismissal of a lawsuit under the anti-SLAPP statute if the act or omission complained of is, in part, "an act or omission taken in good faith and with a reasonable basis in law and fact." Ind. Code § 34-7-7-5(2). Coupled contends that Brandom cannot show good faith regarding the following statement from the newspaper article:

> Initially, the company asked the workers to surrender their sickness and accident pay, their bereavement pay, and a $1 an hour raise as well as dental and life insurance. When union

15

leaders balked, the company scaled back its request to just the dental and life insurance, but when that was submitted to the rank and file for a vote, they turned it down by a 92-4 margin.

Appellant's App. p. 16. However, in support of her motion to dismiss, Brandom designated

her affidavit, which provided:

13. The meeting continued and Tina [Johnson] talked about the need for us to make concessions. She told us that our benefits were better than those paid to the workers at the Upper Sandusky plant. She spelled out the difference in the cost of our Sickness and Accident Pay Benefit, the Bereavement Pay Benefit, the Dental Insurance Benefit, and the Life Insurance Benefit, as well as the dollar-an-hour raise we had gotten when the contract was ratified. I understood that Tina Johnson wanted concessions from us concerning these benefits to cover the cost of the move.

14. The next day, September 1, 2009, Tina Johnson sent a letter to our UAW International Representative, Jeff Shrock and the union, specifically asking us to give up our dental and life insurance benefits. . . .

\* \* \* \* \*

21. The statement in the article regarding concessions sought by Coupled Products was not attributed to me. The exact phrasing of the statement was the reporter's own. I did communicate to the reporter that Coupled Products sought additional concessions in return for the move of work to Columbia City. Possible concessions that were discussed included the company-provided bereavement pay, sickness and accident pay, dental insurance, life insurance, and a $1 an hour raise. The fact that these possible concessions were discussed is true. I communicated the discussions to the reporter in good faith and without malice.

16

Id. at 19, 21.

According to Coupled, Brandom's state of mind "could not have indicated honesty and lawfulness of purpose" because, when she talked to the reporter, she knew that Coupled was asking for concessions only regarding the employer portion of the dental and life insurance benefits. Appellee's Br. p. 14. Coupled designated evidence that, although differences between the benefits received by employees at the Coupled's union and non-union facilities were discussed during negotiations, it formally requested concessions only on the employer contribution to the life and dental insurance.

I cannot conclude that this evidence establishes that Brandom acted in bad faith or without a reasonable basis in law and fact. The "actual malice standard . . . protects those negligent or careless false statements of fact that are inevitable in free debate, as is required by the Constitution." Love v. Rehfus, 946 N.E.2d 1, 15 (Ind. 2011). "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517, 111 S. Ct. 2419, 2433 (1991) (quoting Heuer v. Kee, 15 Cal.App.2d 710, 714, 59 P.2d 1063, 1064 (1936)).

The difference between "discussing" concessions and "asking" for concessions is a mere matter of semantics that should not be used to chill free speech. The same can be said about the difference between surrendering life and dental insurance versus surrendering the employer contribution to the life and dental insurance. We are viewing here an important economic issue not only to the actual workers at the plant in question, but also to the entire

17

citizenry of Whitley County.  The good faith requirement should and must be present, but in this context, with collective bargaining in play, I believe Brandom's conversation with the reporter was had in good faith.  Remember, too, there is no direct quote in the article in question, and the reporter was free to, and undoubtedly did, capsulize, summarize, and characterize the conversation.  In my view, the anti-SLAPP statute provides protection in such instances.  I believe Brandom was entitled to her dismissal and protection under the statute.