Mathias, Judge,
concurring in part and dissenting in part,
I agree with the majority’s conclusion that the speech at issue in this appeal relates to a matter of public concern. I also agree that the trial court properly granted summary judgment to the Appellees with respect to 401 Public Safety. However, I do not agree with the majority’s conclusion that the Appellees established as a matter of law that they acted in good faith and with á reasonable basis in law and fact with respect to Lifeline Data Cénters.
“[A] State has a legitimate interest in upholding the integrity of the electoral process.” Brown v. Hartlage, 456 U.S. 45, 52, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982). Importantly, “the free exchange of ideas provides special vitality to the process traditionally at the heart of American constitutional democracy—the political campaign.” Id. at 52-53, 102 S.Ct. 1523.
Presumably, a candidate for public office does not enter into the fray lightly, but rather, armed with the knowledge that he or she may be attacked by a political opponent in print, televisión, and social media. In addition, this case demonstrates that a private company or individual who made a prior campaign contribution to a candidate or politician can be involuntarily thrown into the fray as well. In our current political climate, impugning the integrity of a private company or individual is unfortunately considered fair game.
Politicians can be held accountable for publishing dishonest statements to the public with actual malice, i.e. “with knowledge that it was false or with reckless disregard of whether it was false or not.” See Shepard v. Schurz Communications, Inc. et al., 847 N.E.2d 219, 225 (Ind. Ct. App. 2006). Requiring political campaigns to refrain from publishing defamatory statements does not have a chilling effect on responsible freedom of speech.
Turning to the facts in this appeal, the designated evidence established that Ray did not know who owned the former Eastgate Mall site when the flyer was sent to his constituents. Appellant’s App. Vol. II, p. 106. Henderson, Ray’s campaign consultant who created the flyer, admitted that Lifeline’s donations to Hunter’s campaign had no impact on Hunter’s decision to support the City’s lease of a portion of the former Eastgate Mall site. Appellant’s App. Vol. Ill, pp. 242, 248. Lifeline did not have a lease with the City, but the flyer implies that Lifeline did have a contract with the City, and the contract was obtained by donating money to Ben' Hunter’s campaign. When considered as a whole, the flyer also implies that Lifeline was responsible for the dangerous condition of the building. ’
After reviewing the flyer and other designated evidence, I would conclude that whether Ray made the statements in the flyer without actual malice ■ and in good faith is a genuine issue , of material fact that must be resolved by the fact finder. I *904 would therefore reverse the trial court’s entry of summary judgment for Ray with respect to Lifeline’s claims.