OPINION
MAY, Judge.
Janice Brandom’s employer, Coupled Products, LLC, sued her for defamation after she made comments to a local newspaper about Coupled. Brandom moved to dismiss pursuant to the “anti-SLAPP” statute, Ind.Code § 34-7-7-5, which is intended to discourage lawsuits brought primarily to chill free speech about issues of public concern. Her motion was denied, and we affirm.[1]
FACTS AND PROCEDURAL HISTORY
Brandom was an employee of Coupled Products. Coupled’s hourly employees are represented by UAW Local 2049 (“the Local”), and Brandom was chair of the Local’s bargaining committee. Between August of 2009 and July of 2010, articles appeared in a Whitley County newspaper about Coupled’s proposed move of equipment from an Ohio facility to Columbia City, Indiana; a tax abatement Whitley County had promised in exchange for the move; and jobs the move would bring.
On September 16, 2009, the newspaper published an article with a number of statements Coupled contends are false: 1) that Coupled received a tax abatement from Whitley County after it announced plans to move some of its operations to Columbia City from Ohio; 2) that Coupled was making automotive components for Ford, General Motors, and Chrysler; 3) that seven truckloads of equipment were delivered to Coupled but were removed after the Local voted down certain concessions; 4) that Coupled asked members of the Local to surrender sickness and accident pay, bereavement pay, dental and life insurance, and a one dollar per hour raise; and 5) that Coupled raised the deductible on the employees’ health insurance plan without the knowledge or consent of the Local. Coupled believed Brandom was the source of those statements.
Coupled sued Brandom for defamation, submitted evidence to contradict the statements Brandom allegedly gave the newspaper, and submitted evidence there had been a “noticeable decrease in employee morale and productivity” and “a noticeable increase in hostility” toward management. (Appellee’s App. at 78.) Brandom moved to dismiss pursuant to the “Anti-SLAPP” statute on the ground the statements were made in furtherance of her right to free speech in connection with an issue of public interest. Both parties designated evidence, and the trial court denied Brandom’s motion to dismiss. It then certified its order for interlocutory appeal, and we accepted jurisdiction.
*385 DISCUSSION AND DECISION
“SLAPPs,” or Strategic Lawsuits Against Public Participation, are “merit-less suits aimed at silencing a plaintiffs opponents, or at least at diverting their resources.” Hamilton v. Prewett, 860 N.E.2d 1234, 1241-42 (Ind.Ct.App.2007) (quoting John C. Barker, Common-Law and Statutory Solutions to the Problem of SLAPPS, 26 Loy. L.A. L. Rev. 895, 403 (1993)), trans. denied. The anti-SLAPP statute is intended to reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. Id. To reduce the number of lawsuits brought to chill speech, a defendant who prevails on a motion to dismiss under the anti-SLAPP statute is entitled to recover reasonable attorney’s fees and costs. Ind.Code § 34-7-7-7.
The “anti-SLAPP” statute provides:
It is a defense in a civil action against a person that the act or omission complained of is:
(1) an act or omission of that person in furtherance of the person’s right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and
(2) an act or omission taken in good faith and with a reasonable basis in law and fact.
Ind.Code § 34-7-7-5. The person who files a motion to dismiss must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person’s constitutional right of petition or free speech. Ind.Code § 34-7-7-9.
A motion to dismiss brought under this chapter is treated as a motion for summary judgment. Ind.Code § 34-7-7-9. The motion is to be granted if the court finds the person filing the motion has proven, by a preponderance of the evidence, that the act on which the claim is based is a lawful act in furtherance of the person’s constitutional right of petition or free speech. Id.
Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Hamilton, 860 N.E.2d at 1240. On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against Brandom, the moving party. See id. All facts and reasonable inferences from those facts are construed in favor of Coupled, the nonmoving party. See id. If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. Id. The party appealing a summary judgment has the burden of persuading us the grant or denial of summary judgment was erroneous. Id.
Brandom spoke on a matter of public interest but there is a genuine issue as to whether she spoke in good faith and without malice. Her motion to dismiss was therefore properly denied.
1. Issue of Public Interest
Brandom demonstrated her speech was related to an issue of public interest. The person who files a motion to dismiss must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person’s constitutional right of petition or free speech. Ind.Code § 34-7-7-9.[2]
*386 Coupled alleged Brandom’s defamatory statements were her statements to the newspaper that: (1) Coupled had received a tax abatement from Whitley County after it announced plans to move some operations from Ohio to Columbia City; (2) Coupled was manufacturing automobile components for General Motors, Ford and Chrysler; (3) seven truckloads of equipment were delivered to Coupled but were removed after the Local voted down certain concessions; (4) Coupled asked the union members to surrender their sickness and accident pay, bereavement pay, their dental and life insurance, and a one dollar per hour raise; and (5) Coupled raised the health insurance deductible without the knowledge or consent of the Local.
Speech is on a matter of public concern if it is addressed to “any matter of political, social, or other concern to the community,” as determined by its content, form, and context. Love v. Rehfus, 946 N.E.2d 1, 10 (Ind.2011) (quoting Connick v. Myers, 461 U.S. 138, 146-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)), reh’g denied. Our courts have not addressed at length when speech is or is not about a matter of public concern in the anti-SLAPP context, but we find instructive the analysis in Cross v. Cooper, 197 Cal.App.4th 357, 127 Cal.Rptr.3d 903, 912-14 (2011), as modified on denial of reh’g, review denied.
[The terms “public interest” and “public issue”] are inherently amorphous and thus do not lend themselves to a precise, all-encompassing definition. Some courts have noted commentary that no standards are necessary because courts and attorneys will, or should, know a public concern when they see it.
Nevertheless, courts have discussed how to decide whether a statement concerns a matter of public interest. In Nygard, Inc. v. Uusi-Kerttula (2008) 159 Cal.App.4th 1027, 72 Cal.Rptr.3d 210 (Nygard), the court pointed out that although [the California anti-SLAPP statute] does not define “public interest,” it does mandate that its provisions “ ‘be construed broadly’ to safeguard ‘the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.’ ” (Id. at p. 1039, 72 Cal.Rptr.3d 210, quoting § 425.16, subd. (a).)
⅜ ⅜ ‡ $ ‡ ⅜
Accordingly, courts have broadly construed “public interest” to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. Indeed, even before the Legislature mandated broad construction, the court in [Church of Scientology v. Wollersheim, 42 Cal.App.4th 628, 49 Cal.Rptr.2d 620 (1996), review denied ] opined that “[although *387 matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals.” (Id. at p. 650, 49 Cal.Rptr.2d 620). And in Nygard, supra, 159 Cal.App.4th at page 1042, 72 Cal.Rptr.3d 210, the court opined that taken together, the legislative history of the amendment and the cases that precipitated it “suggest that ‘an issue of public interest’ ... is any issue in which the public is interested. In other words, the issue need not be ‘significant’ to be protected by the anti-SLAPP statute — it is enough that it is one in which the public takes an interest.”
In [Rivero v. Am. Fed’n of State, County, & Mun. Employees, AFL-CIO, 105 Cal.App.4th 913, 130 Cal.Rptr.2d 81 (2003), review denied], the court reviewed several cases and described three non-exclusive and sometimes overlapping categories of statements that have been given anti-SLAPP protection. (Id. at pp. 919-924, 130 Cal.Rptr.2d 81.) The first category comprises cases where the statement or activity precipitating the underlying cause of action was “a person or entity in the public eye.” (Id. at p. 924, 130 Cal.Rptr.2d 81.) The second category comprises cases where the statement or activity precipitating the underlying cause of action “involved conduct that could affect large numbers of people beyond the direct participants.” (Ibid.) And the third category comprises cases where the statement or activity precipitating the claim involved “a topic of widespread, public interest.” (Ibid.) Courts have adopted these categories as a useful framework for analyzing whether a statement implicates an issue of public interest and thus qualifies for anti-SLAPP protection.
We agree with Brandom that her statements were “undertaken in connection with a public issue in furtherance of [Brandom’s] right to free speech.” (Appellee’s App. at 91.) Her statements were made in the context of negotiations between Coupled and the union concerning a move of some of Coupled’s business to Columbia City, and all the statements “concerned either the details of the move or concessions [Coupled] had asked its employees to make in anticipation of the move.” (Id. at 93.) The economic impact of the move made the issue one of public interest and the matter was significant enough to the community that the local newspaper devoted several articles to it.
Brandom’s statements fit within the second and third Cross categories, ie., statements involving conduct that could affect large numbers of people beyond the direct participants and statements involving a topic of widespread, public interest.
In Love, a firefighter sent a private email supporting a candidate for trustee and criticizing the efficiency and financial stability of the township’s fire department. Our Indiana Supreme Court found the government’s allocation of funds and resources within a fire department was a matter of public concern, and Love’s email was not “an extension of any dispute with his superiors.... [T]his was a general grievance as to the operation of government like the letter in Pickering;[3] it was *388 not an employment-related grievance.” Id. at 10 (footnote added).
Nor did Brandom’s statements in the case before us reflect a mere “employment-related grievance.” See id. To the extent the Local’s willingness to accept pay and benefit concessions might have affected Coupled’s decision whether to move some of its operations to Columbia City, the outcome of such employment-related grievances had broader implications that would affect large numbers of people beyond the direct participants. As her statements dealt with “the role of [Coupled] in the economic development of Columbia City,” (Appellant’s Br. at 18), and the effect on the community of the tax abatement and the expansion of jobs and economic activity there, they addressed matters of public interest.
2. Good Faith/Malice
While Brandom’s statements were made “in connection with a public issue,” Ind.Code § 34-7-7-5, there is a genuine issue of material fact as to whether she made the statements without malice or “in good faith and with a reasonable basis in law and fact.”[4] Id. If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. Hamilton, 860 N.E.2d at 1240. Resolving, as we must, all doubts as to the existence of material issues of fact against Brandom, the moving party, id., and construing all facts and reasonable inferences from those facts in favor of the nonmoving party, Coupled, id., we hold the trial court could properly deny Brandom’s motion to dismiss on the ground there is an issue[5] whether her statements were made in good faith or were made with malice. Id.
In Nexus Group, Inc. v. Heritage Appraisal Serv., 942 N.E.2d 119, 122 (Ind.Ct.App.2011), we stated the definition of “good faith” in the context of defamation law: “a state of mind indicating honesty and lawfulness of purpose; belief in one’s legal right; and a belief that one’s conduct *389 is not unconscionable.” Id. (quoting Owens v. Schoenberger, 681 N.E.2d 760, 764 (Ind.Ct.App.1997), reh’g denied). We addressed whether the various statements Heritage made were in good faith. The first was: “I have seen massive over assessments especially in the industrial sector in Michigan City and even Nexus, the out of town firm hired without a bid contract says they have no support for the number they chose to value this acreage.” Id. at 122-28. We noted the research Heritage did and the data it collected to support that statement, then said:
Putting aside whether this statement was actually true or false, we note that Nexus has offered no evidence establishing that Heritage knew it was false or entertained serious doubts as to its truth. As a general matter, Nexus directs our attention to evidence that Heritage is a business competitor of Nexus, that Landing considered himself to be an “adversary” of Nexus, appellant’s app. p. 175, and that Landing allegedly harbored resentments stemming from Nexus’s failure to retain his services in the past. Nexus argues that this evidence establishes Heritage’s bad faith.
While this evidence, if true, tends to show that Heritage may not have been acting solely out of concern for the well-being of the community by sending the letter to the newspaper, we cannot conclude that it establishes that Heritage was not acting in good faith. To the contrary, the record reveals that [Heritage’s owner] was genuinely concerned about the quality of the work being performed by Nexus and the fact that the county was footing the bill. That he also may have been motivated by self-interest makes him human, but does not necessarily mean that he acted in bad faith. With respect to each of these statements, the record shows that Landing genuinely believed that he was being factual and also believed that it would be best for his community to sever ties with Nexus. Consequently, we do not find that this evidence establishes that Landing acted in bad faith or without a reasonable basis in law and fact.
Id. at 128.
Bad faith, then, appears to require, regardless of truth or falsity, a statement the speaker “knew ... was false or entertained serious doubts as to its truth”; even if the speaker is “motivated by self-interest,” a statement might not be in bad faith if the speaker “genuinely believed that he was being factual and also believed that it would be best for his community” to pursue the subject matter of the statement. Id. at 123.
As for malice, we said in Shepard that
[s]ubstantively, [the anti-SLAPP statute] does not supplant the Indiana common law of defamation, but provides that the movant must establish that his or her speech was “lawful.” Ind.Code § 34-7-7-9(d). To establish a claim of defamation, a plaintiff must prove the existence of “ ‘a communication with defamatory imputation, malice, publication, and damages.’ ”
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
Actual malice exists when the defendant publishes a defamatory statement “ ‘with knowledge that it was false or with reckless disregard of whether it was false or not.’ ”
847 N.E.2d at 224-25 (footnote and internal citations omitted).
Brandom relies on Shepard as the basis for her argument Coupled was obliged to prove she acted with actual malice, and not just that her speech was not in good faith. There is malice when a defendant publishes a defamatory statement with knowledge it is false or with reckless *390 disregard of whether it was false. Id. at 225.
Actual malice is not an objective standard of reasonableness; rather, it is a subjective standard that requires one challenging the speech, here Coupled, to prove by clear and convincing evidence that the speaker “ ‘in fact entertained serious doubts as to the truth of his publication,’ or acted with a ‘high degree of awareness of ... probable falsity.’ ” Love, 946 N.E.2d at 14-15 (quoting Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991)). A speaker is not required to verify facts before speaking unless she has some reason to doubt the veracity of those facts. Id. at 15. The actual malice standard protects those negligent or careless false statements of fact that are inevitable in free debate. Id.
There is a genuine issue of fact as to whether Brandom knew her statements were false, entertained serious doubts as to their truth, or made the statements with reckless disregard of whether they were false. Coupled addresses only one of Brandom’s statements in support of its argument she did not act in good faith: “[at] the very least, Brandom cannot show good faith on the issue of whether Coupled sought additional concessions from UAW Local 2049 including company provided bereavement pay, sickness and accident pay, dental insurance, life insurance, and a One Dollar ($1) an hour raise.” (Br. of Appellee at 14.) There was evidence before the trial court that could permit a jury to infer Brandom might not have “genuinely believed [she] was being factual” in her statements that Coupled demanded additional concessions or that she entertained serious doubts,” id,., as to the truth of the statements.
Coupled points to evidence Brandom “clearly knew,” (Br. of Appellee at 5), that the only concessions Coupled had asked for were the surrender of the employer portion of the dental and life insurance premiums, but despite that knowledge, Brandom told the newspaper Coupled sought additional concessions — specifically bereavement pay, sickness and accident pay, dental insurance, life insurance, and a one dollar per hour raise.
Brandom admitted she told the newspaper that Coupled raised the deductible on the company’s health insurance plan without the knowledge or consent of the Local officials, which statement was inconsistent with statements made during negotiations between Coupled and the Local. Coupled then asserts “Brandom admitted she conveyed to [the newspaper] that Coupled sohght additional concessions from UAW Local 2049 including company provided bereavement pay, sickness and accident pay, dental; insurance, life insurance, and a One Dollar ($1) an hour raise.” (Id.) In the interrogatory response to which Coupled directs us, Brandom said “[t]he fact that these possible concessions were discussed is true.” (Id. at 32) (emphasis added). Coupled directs us to evidence Coupled “never formally asked the Local 2049 to surrender anything but the employer portion of the life and dental insurance,” (Br. of Appellee at 5), and never “asked the bargaining committee for a concession that involved forfeiting union employees’ sickness, accident, or bereavement pay.” (Id.)
We acknowledge Brandom’s argument she did not speak with malice because her statements had “a substantial basis in the truth” which is enough to defeat defamation. See Love, 946 N.E.2d at 15 n. 13 (“Minor inaccuracies do not amount to falsity so long as ‘the substance, the gist, the sting, of the libelous charge be justified.’ ”) (quoting Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510, 111 S.Ct. 2419, 115 *391 L.Ed.2d 447 (1991)). Brandom notes evidence a union representative who met with Coupled testified that, while Coupled did not “formally propose” the union members give up the additional concessions, they were all “on the table.” (Appellant’s App. at 124.)
As there was a genuine issue of fact as to whether Brandom genuinely believed she was being factual in her statements that Coupled demanded additional concessions or that she entertained serious doubts as to the truth of the statements, her motion to dismiss was properly denied. We accordingly affirm.
Affirmed.
FRIEDLANDER, J., concurs.
BARNES, J., dissents with separate opinion.

. We heard oral argument August 6, 2012. We commend counsel on the quality of their advocacy.

. Coupled first asserts Brandom's statement of the issue of public interest related to her speech was not sufficiently specific. Coupled offers no authority to explain what level of *386 specificity the statute requires, nor does it explain why Brandom's statement was inadequate. Rather, it simply concludes her motion does not “state with any specificity the public issue or issue of public interest that prompted the act.” (Br. of Appellee at 13.) Brandom responds by pointing to language she included in the motion to dismiss, then concludes, also without citation to authority, she "clearly complied with her obligations under the anti-SLAPP statute.” (Appellant’s Reply Br. at 3.) In her motion, she did not quote or paraphrase specific statements she made, but she accurately characterized the statements as made in the context of negotiations between the Local and Coupled, which negotiations "concerned the move of a significant portion of [Coupled's] business to the Columbia City facility whose employees are represented by” the Local. (Appellee’s App. at 93.) The statements “all concerned either the details of the move or concessions that [Coupled] had asked its employees to make in anticipation of the move.” (Id.) Brandom’s statement was specific enough.

. In Pickering v. Board of Education, 391 U.S. 563, 566, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the United States Supreme Court held the First Amendment protected a public school teacher who wrote a letter to a newspaper in which he criticized the allocation of school funds and the manner by which the school board raised such funds:
'Pickering and its progeny provide a two-step analysis for determining whether the *388 First Amendment protects an employee’s speech. First, the employee must have been speaking as a citizen on a matter of public concern. Garcetti [v. Ceballos, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) ]. If this threshold requirement is not met, then there is no First Amendment retaliation claim. Id. If the employee satisfies this threshold, then the Pickering balancing test must be applied to determine if the government was justified in ‘‘treating the employee differently from any other member of the general public.”
Love, 946 N.E.2d at 9 (quoting Garcetti, 547 U.S. at 418, 126 S.Ct. 1951). Neither Love nor Pickering addressed an anti-SLAPP statute. Rather, both involved claims by public employees that they had been fired, not sued, for statements they made.

. Coupled argues, pursuant to that section of the anti-SLAPP statute, Brandom’s statements were not made in good faith. In her brief, Brandom argues her statements were not made with actual malice. (Appellant’s Br. at 14) (citing Shepard v. Schurz Communications, Inc., 847 N.E.2d 219, 224 (Ind.Ct.App.2006), which applied an actual malice standard in an anti-SLAPP case). Brandom does not offer argument about good faith, and Coupled does not offer argument about malice in its argument the anti-SLAPP statute does not apply. It does argue, in the alternative, that if this court should "consider matters outside the scope of the Anti-SLAPP statute,” Brandom's statements were defamatory because they were made with actual malice. (Br. of Appellee at 16.) We find there is a genuine issue of fact under either standard.

. Judge Barnes’s well-supported dissent appears to be based on the premise he "cannot conclude that this evidence establishes that Brandom acted in bad faith or without a reasonable basis in law or fact.” Brandom v. Coupled Products, LLC, No. 92A03-1112-PL-542, op. at 392 (Ind. Ct. App. 2012). Nor can we, and we do not reach any such conclusion. Rather, we hold only that the designated evidence gives rise to a genuine issue of fact as to whether Brandom’s statements were in good faith.