

FILED

Jul 21 2017, 6:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Ronald J. Waicukauski
Price Waicukauski Joven & Catlin, LLC
Indianapolis, Indiana

William W. Gooden
Maggie L. Sadler
Clark Quinn Moses Scott & Grahn, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryce H. Bennett, Jr.
Laura S. Reed
Laura K. Binford
Courtney David Mills
Riley Bennett Egloff LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Paul Gresk, Trustee for the
Bankruptcy Estate of Derek
VanWinkle and Stacey
VanWinkle on behalf of M.V.
and A.V., their minor children,

*Appellants-Respondents,*

v.

Cortney Demetris, M.D.,

*Appellee-Petitioner*

Stephen W. Robertson,
Commissioner of the Indiana
Department of Revenue,

*Party in Interest*

July 21, 2017

Court of Appeals Case No.
49A02-1610-MI-2287

Appeal from the Marion Superior
Court

The Honorable John M.T. Chavis,
II, Judge

Trial Court Cause No.
49D05-1510-MI-35716

**Vaidik, Chief Judge.**

# Case Summary

[1] A minor and her family filed a medical-malpractice complaint against a doctor after the doctor reported to the Department of Child Services (DCS) that the minor was a victim of medical child abuse. The doctor filed a motion to dismiss the complaint pursuant to Indiana's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, which protects a person's right of petition or free speech under the federal and state constitutions "in connection with a public issue or an issue of public interest." The doctor claimed that her report to DCS was protected by the anti-SLAPP statute. The trial court agreed, finding that the doctor spoke about a public issue or an issue of public interest when she made the report to DCS.

[2] We find that the anti-SLAPP statute does not apply to reports of child abuse or neglect made to DCS. While child-abuse detection and prevention, on a macro level, is of great interest to the general public, individual reporting is not. Furthermore, the doctor's report was not made "in furtherance of" her constitutional rights, as required by the anti-SLAPP statute, but rather because of her statutory duty to report child abuse or neglect. We therefore reverse and remand.

# Facts and Procedural History

[3] Stacey and Derek VanWinkle have two children, M.V., born in 1999, and A.V., born in 2001. Stacey was a neonatal-intensive-care-unit nurse at an

Indianapolis hospital, and Derek was a stay-at-home father. Since birth, A.V. has experienced several medical issues—including gastrointestinal (GI) issues, urinary-tract issues, muscular issues, and neurological issues—and has undergone several medical procedures. Relevant to this appeal, A.V. became a patient of Dr. Susan Maisel, a pediatric gastroenterologist at Peyton Manning Children's Hospital at St. Vincent, in 2004. In May 2013, Dr. Maisel became concerned that A.V.'s symptoms were being exaggerated by Stacey. Dr. Maisel recommended admitting A.V. to the hospital to observe her GI symptoms. She also contacted Dr. Cortney Demetris, who is board certified in both pediatrics and child-abuse pediatrics and the co-director of the hospital's Child Protection Team,[1] with concerns that A.V. was a victim of medical child abuse. Medical child abuse—formerly called Munchausen Syndrome by proxy—is a form of child abuse whereby a child suffers at the hands of healthcare providers who perform unnecessary and potentially risky testing or interventions on the child due to false reporting by the child's caregiver to the medical team. *See* Appellee's App. Vol. V p. 26.

[4] As a result of Dr. Maisel's recommendations, on June 10, 2013, A.V. was admitted to Peyton Manning Children's Hospital for observation of her GI symptoms. Dr. Demetris was A.V.'s attending physician. During her stay, A.V. underwent a GI procedure performed by Dr. Maisel; the results of this

---

[1] The hospital's Child Protection Team provides consultations for suspicions of child abuse or neglect. Dr. Demetris was one of two physicians on the team.

procedure were normal. Covert video surveillance (CVS) was also set up in A.V.'s hospital room. Someone watched the CVS feed at all times and documented what happened. On June 12, Dr. Demetris made the following notes in A.V.'s chart:

> After my review of the sitter's notes regarding the CVS and many personal hours of CVS review (17 hours)—[A.V.] is not having any significant medical complaints. She is seen to be eating well, moving around well, interacting in an age typical manner (largely), and not complaining to her parents of any medical complaints. Overall, I see a well appearing child.

> Based on my review of the video feed, my conversations with several other physicians who have cared for [A.V.], and my interactions with [A.V.] and her parents, it is my belief that she suffers from a form of child abuse called Medical Child Abuse (formerly called Munchausen Syndrome by proxy). Medical Child Abuse is a form of child abuse in which the child suffers at the hands of medical providers based on false parental reporting of symptoms in the child. This false parental reporting leads to the child being subjected to many medical visits, medications, tests, and procedures.

Appellants' App. Vol. II p. 127. Dr. Demetris recommended continued hospitalization so that they could start to "sort out" "the true medical problems from those that do not exist." *Id.* at 128. That same day, a hospital social worker called DCS to report Dr. Demetris's diagnosis of medical child abuse. *See* Ind. Code ch. 31-33-5 (duty to report child abuse or neglect). A.V. was discharged from the hospital that night.

[5]     A DCS official later contacted Dr. Demetris to schedule a care conference, which was held on June 17. Participants included Dr. Demetris and Dr. Maisel, DCS and law-enforcement officials, and healthcare providers from several area hospitals. Later that same day, DCS removed M.V. and A.V. from their parents and re-admitted A.V. to Peyton Manning Children's Hospital. DCS also filed a petition alleging that the children were in need of services (CHINS). Appellants' App. Vol. II pp. 130-31 (alleging that the children's physical or mental condition was seriously impaired or endangered as a result of the inability, refusal, or neglect of the parents to supply them with the necessary food, clothing, shelter, medical care, education, or supervision).

[6]     A.V. was hospitalized from June 17-24, 2013. During this second hospital stay, multiple physicians saw A.V. and removed her from several medications and medical interventions. *See* Appellee's App. Vol. II pp. 94-97 (discharge notes). For example, A.V.'s urinary catheter was removed and she was weaned off the medicines Valium and Topamax. The children were returned to the care of their parents on July 10, approximately three weeks after they were removed. DCS voluntarily dismissed the CHINS petition in October 2013.

[7]     Because Stacey worked with children, DCS conducted a Child Care Worker Assessment Review (CCWAR) regarding the allegations that she neglected M.V. and A.V. *See* Appellants' App. Vol. II p. 65; *see also* 465 Ind. Admin. Code 3-2-2. DCS substantiated these allegations. Following a weeklong hearing in January 2014, an administrative law judge (ALJ) substantiated the allegations of neglect as to A.V. only. However, a trial court reversed the ALJ's

finding of neglect as to A.V. in December 2014.[2]  *See* Appellants' App. Vol. II pp. 64-88.

[8]     In June 2015, the VanWinkles, individually and on behalf of M.V. and A.V.,[3] filed a proposed complaint for medical malpractice against Dr. Demetris with the Indiana Department of Insurance.[4]  The complaint alleges as follows:

> 5. On or about June 10, 2013, AV was admitted to St. Vincent's by her parents due to gastrointestinal (GI) concerns.  After admission, AV was evaluated for medical child abuse by Dr. Demetris.
>
> 6. Based upon her observations of AV in a clinical setting and the review of some medical records, Dr. Demetris diagnosed AV as a victim of medical child abuse, identifying AV's mother, Stacey, as the perpetrator.
>
> 7. Without a medical records review or clinical observation, at some point after June 10, 2013, Dr. Demetris also diagnosed MV

---

[2] In a separate proceeding DCS substantiated a finding of neglect as to Derek, which the trial court also reversed.

[3] In April 2016, Paul Gresk, Trustee for the Bankruptcy Estate of Derek and Stacey VanWinkle, was substituted as the real party in interest as to the claims of Derek and Stacey VanWinkle (but not as to the separate claims of M.V. and A.V.).

[4] The VanWinkles also sued Dr. Demetris and several DCS officials in federal district court, alleging civil-rights violations pursuant to 28 U.S.C. § 1983.  Dr. Demetris filed a motion to dismiss, which the district court granted in December 2015.  Specifically, the district court found that "the absolute privileges of judicial and witness immunity protect Dr. Demetris from liability stemming from her report regarding AV, her participation in the administrative process (including her testimony in front of the ALJs), and her participation in the state court proceedings." Appellants' App. Vol. III p. 98.  The claims against the DCS defendants remain pending.  *See VanWinkle et al. v. Nichols et al.*, 1:15-cv-01082-JMS-MJD (S.D. Ind.).

as a victim of medical child abuse.  Again identifying Stacey as the perpetrator.

8. Dr. Demetris's diagnoses of AV and MV as victims of medical child abuse (and identifying Stacey as the perpetrator) fell below the standard of care of a reasonable physician.

* * * * *

11. As a direct and proximate result of Dr. Demetris's conduct, MV and AV were removed from their home, suffered from a lapse in medically necessary treatment, and suffered emotional damage.

12. As a direct and proximate result of Dr. Demetris's conduct, Stacey and Derek were labeled as the perpetrators of medical child abuse, suffered from the removal of their children from their home, and suffered emotional distress.  In addition, as a direct and proximate result of Dr. Demetris's conduct, Stacey lost her job, which was the sole source of income for the family.

Appellants' App. Vol. III pp. 76-78.

[9]     In October 2015, before a medical review panel considered the complaint, Dr. Demetris filed a combined motion for preliminary determination of law and motion to dismiss the VanWinkles' proposed complaint in Marion Superior Court.  Appellants' App. Vol. II p. 25.  Specifically, Dr. Demetris argued that her report to DCS that she suspected A.V. was the victim of medical child abuse was protected by two statutes: (1) Indiana's anti-SLAPP statute, Indiana Code chapter 34-7-7, and (2) the immunity provision contained in Indiana's

child-abuse reporting statute, Indiana Code section 31-33-6-1.[5]  Dr. Demetris also argued that because M.V. was not her patient, there was no physician-patient relationship.[6]

[10]  In February 2016, Dr. Demetris, in order to "simplify" the issues before the trial court, asked the court to rule on the anti-SLAPP issue only and to stay ruling on the remaining issues of immunity and lack of a physician-patient relationship.  Appellants' Supp. App. p. 2; *see also id.* at 4 ("Simply put, Defendant is asking the Court for **a clean and clear ruling** on Defendant's Anti-SLAPP Act Motion to Dismiss.").  The VanWinkles "joined in the motion for stay of these issues." *Id.* at 21.

[11]  The trial court granted the motion to stay in April 2016.  Appellants' App. Vol. II p. 12.  The court, deciding this case solely on grounds of the anti-SLAPP statute, entered an order granting Dr. Demetris's motion.  Specifically, the court concluded that Dr. Demetris "spoke upon a matter of public concern or public interest when she reported her diagnosis of medical child abuse to the Department of Child Services." *Id.* at 15-16.  Accordingly, it concluded that

---

[5] Section 31-33-6-1 provides that a person who makes or causes to be made a report of child abuse or neglect "is immune from any civil or criminal liability that might otherwise be imposed because of such actions." Failure to make a report is a Class B misdemeanor.  *See* Ind. Code § 31-33-22-1; *see also Smith v. State*, 8 N.E.3d 668, 677 (Ind. 2014) (explaining that the legislature's intent in enacting the reporting statutes was "to encourage effective reporting of potential child abuse or neglect, to facilitate quick investigation of allegations by the proper authorities, and to protect the victims"), *reh'g denied*.

[6] Dr. Demetris later argued in her motion to stay that the VanWinkles' claim was "barred by the quasi-judicial immunity doctrine as decided by Hon. Jane Magnus-Stinson."  Appellants' Supp. App. p. 4 n.2.  She also argued that the VanWinkles were "prohibited from a collateral attack on Hon. Jane Magnus-Stinson's Order pursuant . . . to the Doctrine of Issue Preclusion." *Id.*

Dr. Demetris's speech was protected by the anti-SLAPP statute. The trial court also found that Dr. Demetris's report was "inextricably linked" with A.V.'s second hospitalization and therefore the anti-SLAPP statute applied to this hospitalization as well. *Id.* at 21.

[12] The VanWinkles now appeal the trial court's anti-SLAPP ruling.[7] The trial court stayed Dr. Demetris's request for attorney's fees pursuant to the anti-SLAPP statute pending resolution of this appeal. *Id.* at 9.

# Discussion and Decision

[13] "SLAPP" is an acronym for Strategic Lawsuit Against Public Participation. Anti-SLAPP statutes are a "reasonably new phenomemon"—Indiana's was adopted in 1998—and are designed to "reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Poulard v. Lauth*, 793 N.E.2d 1120, 1122 n.2 (Ind. Ct. App. 2003); *Kadambi v. Express Scripts, Inc.*, 86 F. Supp. 3d 900, 907 (N.D. Ind. 2015).

[14] Indiana's anti-SLAPP statute applies to an act in furtherance of a person's right of petition or free speech under the federal and state constitutions "in

---

[7] In May 2017, we ordered the parties to submit supplemental briefing on the issue of whether Dr. Demetris was immune under our child-abuse reporting statute, noting the principle of law that we can affirm a dismissal on any basis supported by the record. *See Gresk v. Demetris*, No. 49A02-1610-MI-2287 (Ind. Ct. App. May 19, 2017). Having reviewed that briefing, we have decided to address only the trial court's anti-SLAPP ruling.

connection with a public issue or an issue of public interest." Ind. Code § 34-7-7-1. The statute specifically provides:

> It is a defense in a civil action against a person that the act or omission complained of is:
>
> (1) an act[8] or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and
>
> (2) an act or omission taken in good faith and with a reasonable basis in law and fact.

Ind. Code § 34-7-7-5. Our anti-SLAPP statute has generally been invoked in defamation cases. *See 401 Pub. Safety v. Ray*, No. 49A02-1609-PL-2132 (Ind. Ct. App. July 5, 2017); *Brandom v. Coupled Prods., LLC*, 975 N.E.2d 382, 386 (Ind. Ct. App. 2012); *Nexus Grp., Inc. v. Heritage Appraisal Serv.*, 942 N.E.2d 119 (Ind. Ct. App. 2011); *Hamilton v. Prewett*, 860 N.E.2d 1234 (Ind. Ct. App. 2007), *trans. denied*; *Shepard v. Schurz Commc'ns, Inc.*, 847 N.E.2d 219 (Ind. Ct. App. 2006); *Poulard*, 793 N.E.2d at 1120. This is likely because suits that qualify for anti-SLAPP protection are those that are attempts by a plaintiff to silence a defendant's speech on a public issue or an issue of public interest. *See Hamilton*, 860 N.E.2d at 1248 ("Hamilton's suit against Prewett . . . is not the type of

---

[8] "Act" is defined as "any conduct in furtherance of the exercise of the constitutional right of: (1) petition; or (2) free speech; in connection with a public issue or an issue of public interest." Ind. Code § 34-7-7-2.

lawsuit that the anti-SLAPP statute was enacted to prevent. Unlike the plaintiffs in the previous Indiana anti-SLAPP cases, Hamilton did not file his suit to stifle Prewett's speech on a public issue or an issue of public interest.").

[15] If a defendant files a motion to dismiss a lawsuit pursuant to the anti-SLAPP statute, the defendant must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person's right of petition or free speech under the federal or state constitution. Ind. Code § 34-7-7-9(b). The trial court shall: (1) treat the motion as a motion for summary judgment; (2) establish a reasonable time period, not to exceed 180 days, to expedite and rule on the motion; and (3) specify time limits for the discovery of evidence to respond to material issues raised in the motion.[9] I.C. § 34-7-7-9(a); *see also Shepard*, 847 N.E.2d at 224 (explaining that the Trial Rule 56(C) summary-judgment standard applies to motions to dismiss filed pursuant to the anti-SLAPP statute). A prevailing defendant on a motion to dismiss is entitled to recover reasonable attorney's fees and costs. Ind. Code § 34-7-7-7. However, if a court finds that a motion to dismiss is frivolous or solely intended to cause unnecessary delay, the plaintiff is entitled to recover reasonable attorney's fees and costs to answer the motion. Ind. Code § 34-7-7-8.

---

[9] Discovery not relevant to the motion to dismiss is stayed upon the filing of the motion. *See* Ind. Code § 34-7-7-6 ("All discovery proceedings in the action are stayed upon the filing of a motion to dismiss made under this chapter, except for discovery relevant to the motion.")

[16] In her motion to dismiss, Dr. Demetris stated with specificity the following public issue or issue of public interest that prompted the act in furtherance of her right of "free speech" under the United States and Indiana Constitutions: "the act at issue is Dr. Demetris reporting her suspicions that her patient, A.V., was the victim of medical child abuse." Appellants' App. Vol. II p. 33 (emphasis removed). The VanWinkles first argue that Dr. Demetris has "reframe[d]" their medical-malpractice claim into one that is based on the act of reporting medical child abuse to DCS, noting that their medical-malpractice complaint does not expressly mention Dr. Demetris's report to DCS. Appellants' Br. p. 20. Rather, they claim that their medical-malpractice complaint is based on Dr. Demetris's **medical decisions**—"her diagnosis, her decision to hospitalize AV for seven days, and her medical treatment of AV during those seven days." *Id.* We find that the precise characterization of the complaint does not matter. Because even if the VanWinkles' complaint is ultimately based on Dr. Demetris's report to DCS, the anti-SLAPP statute does not apply to it.

[17] Both sides agree that whether Dr. Demetris's report of medical child abuse to DCS was taken in furtherance of her right of petition or free speech under the federal and state constitutions in connection with a public issue or an issue of public interest is an issue of first impression in Indiana. "Speech is a matter of public concern within the context of the Anti-SLAPP statute 'if it is addressed to any matter of political, social, or other concern to the community,' as determined by its content, form, and context.'" *401 Pub. Safety*, No. 49A02-

1609-PL-2132, slip op. at 7 (quoting *Brandom*, 975 N.E.2d at 386). Because we have not addressed "at length" when speech is about a matter of public concern in the anti-SLAPP context, the *Brandom* Court found a California court's analysis of this issue to be instructive:

> [There are] three non-exclusive and sometimes overlapping categories of statements that have been given anti-SLAPP protection. The first category comprises cases where the statement or activity precipitating the underlying cause of action [concerned] "a person or entity in the public eye." The second category comprises cases where the statement or activity precipitating the underlying cause of action "involved conduct that could [directly] affect [a] large number[] of people beyond the direct participants." And the third category comprises cases where the statement or activity precipitating the claim involved "a topic of widespread, public interest." Courts have adopted these categories as a useful framework for analyzing whether a statement implicates an issue of public interest and thus qualifies for anti-SLAPP protection.

975 N.E.2d at 387 (quoting *Cross v. Cooper*, 127 Cal. Rptr. 3d 903 (Cal. Ct. App. 2011) (citing *Rivero v. Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO*, 130 Cal. Rptr. 2d 81 (Cal. Ct. App. 2003)).

[18] Applying that framework here, we find that the first two categories do not apply. The hospital social worker called DCS to report Dr. Demetris's diagnosis of medical child abuse of A.V. The VanWinkle family was not in the public eye. In addition, the report to DCS did not directly affect people beyond the direct participants; it was a private matter. The only category that could possibly apply is the third category, which comprises cases where the statement

or activity precipitating the claim involves a topic of widespread, public interest. But the VanWinkles argue that this category does not apply either. They note that while child-abuse detection and prevention may be a topic of widespread, public interest, individual abuse allegations are not because "the underlying proceedings [a]re confidential as required by law." Appellants' Br. p. 25. They note, for example, that initial calls to the DCS hotline are confidential, DCS reports are confidential, and most juvenile-court records are confidential. *See, e.g.*, Ind. Code §§ 31-33-18-5 ("An audio recording of a telephone call to the child abuse hotline is confidential and may be released only upon a court order."); 31-33-18-1 (noting that reports made under Article 31-33, which governs the reporting and investigation of child abuse and neglect, are "confidential"); 31-39-1-1, -2 (explaining that most juvenile-court records are "confidential"); *In re Paternity of K.D.*, 929 N.E.2d 863, 874 (Ind. Ct. App. 2010) (construing Sections 31-39-1-1 and -2 "to prohibit a party's disclosure of the contents of the records listed in Section 31-39-1-1, in any fashion, to the extent that the party learned the contents of those records in the course of the proceedings or from the documents themselves. Such a rule is in keeping with the spirit of the statutes, which prohibit disclosure of juvenile case records . . . ."); *see also* Ind. Code § 31-33-26-9 (explaining the confidentiality of child-abuse and child-neglect reports and the administrative process governing them); Ind. Admin. Rule 9(G)(1) (noting that cases where court records are declared confidential by statute or court rule are excluded from public access in their entirety).

The VanWinkles also cite as support *Kadambi*, in which the United States District Court for the Northern District of Indiana addressed Indiana's anti-SLAPP statute and the three categories from *Brandom* and concluded that the defendants did not "sufficiently show[] that their actions were in furtherance of free speech on a public issue or matter of public interest." 86 F. Supp. 3d at 910.[10] In that case, Dr. Kadambi, a physician in Fort Wayne, prescribed human growth hormone to eight of his patients who later became plaintiffs in this case (along with Dr. Kadambi). The plaintiffs alleged that the prescriptions were "independently evaluated and determined to be medically necessary for each patient" and that the prescriptions were approved by their insurance companies. *Id.* at 902. However, starting in 2010, the defendant-pharmacies began refusing to honor the prescriptions from Dr. Kadambi. The plaintiffs also claimed that representatives from defendant Accredo made defamatory statements to several of the plaintiffs regarding Dr. Kadambi.

The defendant-pharmacies moved to dismiss the defamation counts pursuant to Indiana's anti-SLAPP statute. They argued that their statements were related to their offering of pharmaceutical services and that the Indiana legislature had declared that the occupation of pharmacy was "a matter of public interest." *Id.* at 908. They also argued that the statements were made in one-on-one conversations with Accredo representatives and were directly related to the

[10] Federal-district-court decisions, while not binding, may be persuasive authority on state courts. *See Plaza Grp. Props., LLC v. Spencer Cty. Plan Comm'n*, 877 N.E.2d 877, 894 (Ind. Ct. App. 2007).

fulfillment of their prescriptions. Dr. Kadambi, however, argued that this interest was too broad and that "[i]f such a broad inference were to succeed th[e]n there would be almost no limit to what is a matter of public interest." *Id.*

The district court agreed with Dr. Kadambi, finding "a logical disconnect between the proffered public interest and the context, form, and content of the statements actually at issue in this case." *Id.* That is, while the defendant-pharmacies asserted "a broad public interest in pharmaceutical services," the district court found "the actual statements at issue [to be] significantly more narrow in scope." *Id.* at 908-09. The district court noted that the statements involved "several explanations, each to a single patient, regarding why a single prescription could not be filled" and that the "conversations took place over the phone, when prompted by a question from the patient regarding the reason the prescription would not be disbursed, and were not . . . disseminated any further." *Id.* at 909. Accordingly, the district court held:

> While the practice of medicine and pharmacy, on the macro level, is no doubt of great interest to the general public, the public interest in the more narrow issues addressed in the statements made by the Accredo personnel is not significant. Specifically, defendants offer no evidence that either Dr. Kadambi or the patients at issue is a person "in the public eye." *Brandom,* 975 N.E.2d at 385. Nor is there any evidence that the alleged conduct by Dr. Kadambi "could affect large numbers of people beyond the direct participants" or that Dr. Kadambi's prescription practices or the medical needs of the patients at issue is "a topic of widespread, public interest." *Id.* Without this more narrow focus on the public interest at issue, the Court believes that the anti-SLAPP protections would paint with too broad a

> brush, providing immunity to any statement made by pharmaceutical personnel simply by virtue of the fact that the industry in which they practice is one of general concern to the public.

*Id.* The district court also found that the defendant-pharmacies' statements were not made "in furtherance of" any free-speech rights, as required by the anti-SLAPP statute. *Id.* The district court noted that the statements were "admittedly self-motivated on a matter of private concern" in order "to protect themselves from potential liability under federal law." *Id.* The district court said this was "inconsistent with any claimed intent to engage in public debate." *Id.*

[22] We find the district court's reasoning persuasive. While child-abuse detection and prevention, on a macro level, is of great interest to the general public, the public interest in the more narrow issues addressed by Dr. Demetris's report to DCS that she believed A.V. was the victim of medical child abuse is not significant. This is because this was a private matter. The call to the DCS hotline was confidential by statute. Any reports generated by DCS in response to the call were confidential by statute, and any juvenile-court proceedings were confidential by statute as well. In other words, there generally cannot be widespread, public interest in individual child-abuse cases because our confidentiality statutes and rules are designed to limit such interest. Accordingly, we conclude that Dr. Demetris's report to DCS was not made in connection with a public issue or an issue of public interest.

[23] In addition, we find that Dr. Demetris did not make the statements "in furtherance of" any free-speech or petitioning rights. Similar to the defendant-pharmacies in *Kadambi*, Dr. Demetris reported her suspicions of child abuse to DCS primarily because of her duty to report imposed by Chapter 31-33-5. *See* Appellants' App. Vol. II p. 103. This is inconsistent with any claimed intent to engage in public debate or to petition the government.

[24] Nevertheless, Dr. Demetris cites California authority holding that reports of suspected child abuse are protected by its anti-SLAPP statute. *See Siam v. Kizilbash*, 31 Cal. Rptr. 3d 368, 374 (Cal. Ct. App. 2005) ("[The defendant's reports of child abuse] were designed to prompt action by law enforcement or child welfare agencies. Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute. Thus, defendant's reports of child abuse to persons who are bound by law to investigate the report or to transmit the report to the authorities are protected by the statute." (citations omitted)); *see also Comstock v. Aber*, 151 Cal. Rptr. 3d 589 (Cal. Ct. App. 2012). However, California's anti-SLAPP statute is different than ours. California, in particular, defines "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include, among other things, "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, **or any other official proceeding authorized by law.**" Cal. Civ. Proc. Code § 425.16(e)(1) (emphasis added). Our statute does not contain this language, *see* I.C. § 34-7-7-2, and this is the precise

language upon which the California courts relied in extending anti-SLAPP protection to reports of suspected child abuse (and other reports as well, such as reports of criminal activity to police). Based on this distinction, we do not find these cases persuasive in interpreting our own anti-SLAPP statute. Accordingly, Dr. Demetris is not entitled to anti-SLAPP protection with regard to her report to DCS.[11]

[25] We therefore reverse the trial court's grant of summary judgment on the anti-SLAPP issue in favor of Dr. Demetris and remand this case to the trial court for consideration of the issues that were stayed—immunity and lack of a physician-patient relationship between Dr. Demetris and M.V. Although we have concluded that the anti-SLAPP statute does not apply to Dr. Demetris's report to DCS, we express no opinion on the stayed issues.

[26] Reversed and remanded.

Bailey, J., and Robb, J., concur.

---

[11] Because we find that Dr. Demetris's report to DCS is not protected by the anti-SLAPP statute, we do not address the trial court's ruling that because Dr. Demetris's report was inextricably linked with A.V.'s second hospitalization, the anti-SLAPP statute applied to this hospitalization as well.